Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
856.761.3400
856.761.1020 fax

Attorneys for Defendants Subaru of America, Inc.
and Subaru Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Vicente Salcedo**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Subaru of America, Inc. and Subaru Corporation,**<br><br>Defendants. | CIVIL ACTION NO. 1:17-CV-08173-JHR-AMD<br><br>**Defendants Subaru of America, Inc. and Subaru Corporation's Brief in Support of Their Motion to Dismiss**<br>**(Fed. R. Civ. P. 12(B)(6))** |

DMEAST #32539905 v1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY .................2

III. ARGUMENT.........................................................................................5

    A. Legal Standard...........................................................................5

        1. Fed. R. Civ. P. 8's Plausibility Standard. ...................5

        2. Pleading Fraud: Rule 9(b)'s Particularity Requirement. ............5

    B. Plaintiff fails to plead which claims he is asserting against which Defendant. ..................................................................................6

    C. Plaintiff's claims are governed by California law; all New Jersey claims must be dismissed. ..........................................................7

        1. Conflicts exist between New Jersey and California law. ...........9

        2. California has the most significant relationship with this controversy.........................................................................12

    D. Plaintiff's express warranty claim fails as a matter of law. ...............16

        1. Plaintiff is seeking to enforce an expired warranty. .................16

        2. Plaintiff has failed to adequately plead that the duration of the Powertrain Limited Warranty is unconscionable. .....................18

        3. The Powertrain Limited Warranty at issue in Plaintiff's Complaint does not cover design defects. ..............................20

    E. Plaintiff's breach of implied warranty of merchantability claim fails for several reasons..................................................................21

        1. Plaintiff's implied warranty expired at the same time as his express warranty. ..................................................................22

        2. Plaintiff's breach of implied warranty claim under the UCC is barred by the statute of limitations. ........................................23

        3. Plaintiff lacks the requisite privity with Subaru of America, Inc. and Subaru Corporation. .........................................................24

        4. Plaintiff lacks standing to bring an implied warranty claim under the Song-Beverly Act...................................................24

    F. Plaintiff's Magnuson-Moss Warranty Act claim fails for the same reasons as his express and implied warranty claims.........................26

G.    Plaintiff's breach of the implied covenant of good faith and fair dealing claim fails as a matter of law because it is based solely on the conduct comprising his breach of warranty claims.............................27

H.    Plaintiff's statutory consumer fraud claims fail for several reasons...29

    1.    Plaintiff fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b)......................................29

    2.    Defendants had no opportunity to make any misrepresentations or omissions to Plaintiff because Plaintiff purchased his vehicle from a private party.................................................................34

    3.    Plaintiff's fraud claims are an impermissible attempt to lengthen his expired Limited Powertrain Warranty.................34

    4.    Plaintiff's New Jersey Consumer Fraud Claims fail as a matter of law...............................................................................35

    5.    Plaintiff's CLRA claims must be dismissed because he failed to file a required affidavit.............................................................36

    6.    Plaintiff's California Unfair Competition Law claim must be dismissed to the extent he seeks monetary damages. ...............37

I.    Plaintiff's requested injunctive relief is preempted by federal law. ...37

IV.    **CONCLUSION** ..............................................................................**40**

ii

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986) ............................................................................17

*Agostino v. Quest Diagnostics*,
256 F.R.D. 437 (D.N.J. 2009)...........................................................................10

*Alban v. BMW of N. Am., LLC*,
2011 U.S. Dist. LEXIS 26754 (D.N.J. Mar. 15, 2011) ...............................20, 18

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2008) ..............................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................5

*Beshwate v. BMW of N. Am., LLC*,
2017 U.S. Dist. LEXIS 164820 (E.D. Cal. Oct. 3, 2017).................................34

*Brothers v. Hewlett Packard Co.*,
2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) ................................21

*Bruce Martin Constr. v. CTB, Inc.*,
735 F.3d 750 (8th Cir. 2013) ............................................................................21

*Bussian v. DaimlerChrysler Corp.*,
411 F. Supp. 2d 614 (M.D.N.C. 2006) .............................................................40

*Chiarelli v. Nissan N. Am., Inc.*,
2015 U.S. Dist. LEXIS 129416 (E.D.N.Y. Sep. 25, 2015) ..............................18

*Clark v. Actavis Grp. HF*,
567 F. Supp. 2d 711 (D.N.J. 2008)...................................................................40

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ................................................................17, 18, 24

iii

*Coba v. Ford Motor Co.*,
  2013 U.S. Dist. LEXIS 8366 (D.N.J. Jan. 22, 2013)............................................29

*Cox House Moving, Inc. v. Ford Motor Co.*,
  2006 WL 2303182 (D.S.C. Aug. 8, 2006)...........................................................38

*Dewey v. Volkswagen AG*,
  558 F. Supp. 2d 505 (D.N.J. 2008)..............................................................7, 17

*Feldman v. Mercedes-Benz U.S., LLC*,
  2012 U.S. Dist. LEXIS 178924 (D.N.J. Dec. 18, 2012).......................................9

*Fisher v. Honda N. Am., Inc.*,
  2014 WL 2808188 (C.D. Ca. 2014) ....................................................................32

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000).............................................................................................39

*Gonzalez v. Drew Indus.*,
  750 F. Supp. 2d 1061 (C.D. Cal. 2007) ..............................................................10

*Gotthelf v. Toyota Motor Sales, U.S.A.*,
  525 F. App'x 94 (3d Cir. 2013) .....................................................................31, 32

*Granillo v. FCA US Ltd. Liab. Co.*,
  2016 U.S. Dist. LEXIS 116573 (D.N.J. Aug. 29, 2016) ....................6, 32, 38, 40

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011)....................................................36

*In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*,
  153 F. Supp. 2d 935 (S.D. Ind. 2001).................................................................39

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...............................................................................3

*In re Sony Gaming Network & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012).................................................................11

*Jarrett v. Panasonic Corp. N. Am.*,
  8 F. Supp. 3d 1074, 1082 (E.D. Ark. 2013)........................................................20

iv

*Johansson v. Cent. Garden & Pet Co.*,
   804 F. Supp. 2d 257 (D.N.J. 2011) ...................................................................26

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................6, 29, 33

*Kounelis v. Sherrer*,
   2005 U.S. Dist. LEXIS 20070 (D.N.J. Sep. 5, 2005) ..........................................7

*Lilly v. Ford Motor Co.*,
   2002 WL 84603910 (N.D. Ill. Jan. 22, 2002) ...................................................39

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014) ...................................................23

*Mack Trucks Inc. v. BorgWarner Turbo Systems, Inc.*,
   508 Fed. App'x 180 (3d. Cir. 2012) ...............................................................21

*Maniscalco v. Brother Int'l (USA) Corp.*,
   709 F.3d 202 (3d Cir. 2013) ......................................................................13, 15

*McCabe v. Daimler AG*,
   948 F. Supp. 2d 1347 (N.D. Ga. 2013) .......................................................31, 34

*McGarvey v. Penske Auto. Grp., Inc.*,
   2010 WL 1379967 (D.N.J. Mar. 29, 2010) ......................................................26

*McVicar v. Goodman Global, Inc.*,
   1 F. Supp. 3d 1044, 1055 (C.D. Cal. 2014) .....................................................36

*Montich v. Miele USA, Inc.*,
   849 F. Supp. 2d 439 (D.N.J. 2012) .............................................................7, 11

*Namovicz v. Cooper Tire & Rubber Co.*,
   225 F. Supp. 2d 582 (D. Md. 2001) ................................................................39

*Nelson v. Nissan N. Am., Inc. & Nissan Motor Co.*,
   2012 U.S. Dist. LEXIS 127522 (D.N.J. Sept. 7, 2012) ......................................18

*Noble v. Porsche Cars N. Am., Inc.*,
   694 F. Supp. 2d 333 (D.N.J. 2010) .................................................................36

v

*Pastor-Richard v. Goodman Glob., Inc.*,
  2013 U.S. Dist. LEXIS 191759 (E.D. Ky. July 2, 2013) ...............................6, 19

*Perez v. Wells Fargo Bank, N.A.*,
  2011 WL 3809808 (N.D. Cal. Aug. 29, 2011) .................................................28

*Plastino v. Wells Fargo Bank*,
  873 F. Supp. 2d 1179 (N.D. Cal. 2012)......................................................27, 28

*Ramziddin v. Monmouth Cty. Sheriff Dep't*,
  2010 U.S. Dist. LEXIS 42798 (D.N.J. Apr. 30, 2010).......................................6

*Robinson v. Kia Motors Am. Inc.*,
  2015 U.S. Dist. LEXIS 121755, at *29-31 (D.N.J. Sep. 11, 2015)..............21, 22

*Rosen v. Uber Tech., Inc.*,
  164 F. Supp. 3d 1165, 1178 (N.D. Cal. 2016)..................................................37

*Ruszecki v. Nelson Bach United States*,
  2015 U.S. Dist. LEXIS 190302 (S.D. Cal. Jan. 12, 2015) ................................37

*Shonk v. Fountain Power Boats*,
  338 F. App'x 282 (4th Cir. 2009) ......................................................................7

*Smith v. Ford Motor Co.*,
  749 F. Supp. 2d 980 (N.D. Cal. 2010)..............................................................19

*Snyder v. Farnam Cos.*,
  792 F. Supp. 2d 712 (D.N.J. 2011)...................................................................10

*Sperling v. Stein Mart, Inc.*,
  2016 U.S. Dist. LEXIS 111227 (C.D. Cal. Jan. 26, 2016)...............................36

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
  2004 U.S. Dist. LEXIS 27086 (S.D.N.Y. June 23, 2004) ..................................3

*Temple v. Fleetwood Enters.*,
  133 Fed. App'x. 254 (6th Cir. 2005) ................................................................27

*Troup v. Toyota Motor Corp.*,
  545 Fed. App'x 668 (9th Cir. 2013) .................................................................21

vi

*Xavier v. Philip Morris USA Inc.*,
  787 F. Supp. 2d 1075 (N.D. Cal. 2011) ...................................................................24

**STATE CASES**

*Alloway v. Gen. Marine Indus., L.P.*,
  149 N.J. 620 (1997) ........................................................................................9

*Bionghi v. Metro. Water Dist.*,
  70 Cal. App. 4th 1358 (Ct. App. 1999) .............................................................28

*Brunswick Hills Racquet Club, Inc. v. Rt. 18 Shopping Ctr. Assocs.*,
  182 N.J. 210 (2005) ........................................................................................28

*Cohen v. DIRECTV, Inc.*,
  101 Cal. Rptr. 3d 37 (Ct. App. 2009) ...............................................................11

*Cornett v. Johnson & Johnson*,
  211 N.J. 362 (2012) ........................................................................................8

*Dagher v. Ford Motor Co.*,
  190 Cal. Rptr. 3d 261 (Ct. App. 2015) .............................................................25

*Daugherty v. Am. Honda Motor Co.*,
  51 Cal. Rptr. 3d 118 (Cal. Ct. App. 2006) ..................................................17, 35

*Enry v. Estate of Merola*,
  171 N.J. 86 (2002) ..........................................................................................15

*Fink v. Ricoh Corp.*,
  365 N.J. Super. 520 (Law Div. 2003) ...............................................................10

*Friedman v. Am. Guardian Warranty Servs.*,
  837 So.2d 1165 (Fla. Dist. Ct. App. 2003) .......................................................31

*Fu v. Fu*,
  160 N.J. 108 (1999) ........................................................................................15

*General Motors Acceptance Corp. v. Jankowitz*,
  216 N.J. Super. 313 (App. Div. 1987) ...............................................................22

*Guz v. Bechtel Nat'l, Inc.*,
  8 P.3d 1089 (Cal. 2000) ..................................................................................28

DMEAST #32539905 v1

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ....................................................................................11

*Inline, Inc. v. Apace Moving Sys.*,
   125 Cal. App. 4th 895 (Cal. Ct. App. 2005) ......................................................37

*Koruba v. Am. Honda Motor Co., Inc.*,
   396 N.J. Super. 517 (App. Div. 2007) ...............................................................12

*Leber v. DKD of Davis, Inc.*,
   187 Cal. Rptr. 3d 731 (Ct. App. 2015) ..............................................................25

*Mydlach v. DaimlerChrysler Corp.*,
   846 N.E.2d 126 (Ill. App. Ct. 2006) ..................................................................23

*P.V. ex rel. T.V. v. Camp Jaycee*,
   197 N.J. 132 (2007) .............................................................................................8

*Perkins v. Daimler Chrysler Corp.*,
   383 N.J. Super. 99, 113 (App. Div.) ............................................................35, 36

**FEDERAL STATUTES**

15 U.S.C. § 2308(b) .................................................................................................23

15 U.S.C. § 2310(d)(2) .............................................................................................26

15 U.S.C. § 3210(d) ..................................................................................................26

49 U.S.C. §§ 30101–30183 .......................................................................................38

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ......................................................................4, 11, 37

Cal. Civ. Code § 1750 .........................................................................................4, 11

Cal. Civ. Code § 1780(d) ..........................................................................................36

Cal. Civ. Code § 1783 ...............................................................................................11

Cal Civ Code § 1791.1(c) .........................................................................................22

Cal. Civ. Code § 1791(a) ..........................................................................................25

DMEAST #32539905 v1

Cal. Civ. Code § 1794 ................................................................................10

Cal. Com. Code § 2725 .............................................................................23

N.J.S.A. 2A:58C-1. ...................................................................................11

N.J.S.A. 12A:2-313 ..................................................................................10

N.J.S.A. 12A:2-714 ..................................................................................10

N.J.S.A. § 2A:14-1 ...................................................................................11

N.J.S.A. § 56:8-19 ....................................................................................11

Uniform Commercial Code............................................................................passim

**RULES**

Fed. R. Civ. P. 8's .................................................................5, 7, 19, 31. 36

Fed. R. Civ. P. 11(b) ...................................................................................19

Fed. R. Civ. P. 12(b)(6)................................................................................5

Fed. R. Civ. P. 9(b) ........................................................................2, 5, 29, 31

Fed. R. Civ. P. 10(b) ....................................................................................7

**OTHER AUTHORITIES**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1248 (2d ed. 1990) ........................................................................7

144 Cal. App. 4th at 835 .............................................................................35

Restatement (Second) Conflict of Laws §§ 145-46 (1971) ......................................8

William A Dreier et al., *New Jersey Products Liability & Toxic Torts Law* (2015 ed.) ........................................................................................8

DMEAST #32539905 v1

## I.     <u>INTRODUCTION</u>

Plaintiff Vicente Salcedo, the California owner of a 2013 Subaru Impreza WRX, has brought a putative class action against Defendants, Subaru of America, Inc. (SOA) and Subaru Corporation (SBR) (or, collectively "Defendants"), alleging that his vehicle was sold with a defect in the engine's rotating assembly that ultimately resulted in engine failure. Plaintiff asserts various breach of warranty and statutory fraud claims against SOA and SBR. As the sole named plaintiff, he seeks to represent a nationwide class of all persons who purchased or leased a model-year 2013 or 2014 Subaru Impreza WRX or WRX STi vehicle (the "Class Vehicles"). In the alternative, he seeks to represent a California class comprised of all persons in California who purchased a Class Vehicle.

Plaintiff's Complaint fails to state any claims for which relief can be granted. Undeterred by the dispositive fact that his vehicle's express powertrain warranty had expired before he experienced the alleged defect, Plaintiff attempts to improperly extend the express warranties provided by SOA. He does so by baldly asserting that the industry-standard, and commonplace, warranty duration of 5 years or 60,000 miles is somehow unconscionable, and by asserting statutory fraud claims premised on alleged omissions at the time of sale.

Plaintiff's claims fail for two predominant reasons. First, the alleged engine problem occurred after the vehicle's warranty expired, and Plaintiff's claims of

unconscionability lack any foundation in pleaded facts or law. As a result, Plaintiff's warranty claims fail as a matter of law. Second, Mr. Salcedo purchased his vehicle secondhand and, accordingly, cannot argue that he was defrauded by any Subaru entity at the time of sale; neither SOA, nor SBR, nor any authorized Subaru retailer participated in the sale.[1] As a result, even if the Complaint satisfied Rule 9(b)'s heightened pleading standard for fraud claims—and it does not—the fraud claims must be dismiss based on Plaintiff's own admission that he did not purchase the vehicle from any Subaru entity. Additionally, California law applies to Plaintiff's claims and his claims brought under New Jersey law must be dismissed.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

Mr. Salcedo purchased a used 2013 Subaru Impreza WRX from a third party in August 2015. Compl. ¶ 13. His vehicle was originally purchased by that third party from Puente Hills Subaru in California, on May 6, 2013. *See* Walters Decl. Ex. A, 1 (Dealer Vehicle Inquiry). Thus, Plaintiff purchased, drove, and, as noted below, serviced his vehicle exclusively in California.

Defendant SBR, "is a corporation organized under the laws of Japan, having its principal place of business in Tokyo, Japan. It is a global transport equipment

---

[1] Mr. Salcedo's status as a used purchaser also calls into question his adequacy to represent a class of new vehicle owners, who purchased their vehicles from authorized Subaru retailers under materially different conditions.

2

DMEAST #32539905 v1

manufacturer engaged in the development and manufacture of Subaru vehicles, parts, and accessories." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 2004 U.S. Dist. LEXIS 27086, at *5 (S.D.N.Y. June 23, 2004). It does not sell or market vehicles to consumers in the United States. Instead, it relies on its distributor, SOA to import, distribute, and market Subaru brand vehicles, parts, and accessories. *Id.*

SOA provides several express written warranties to purchasers of Subaru vehicles. Among them are (1) the New Vehicle Limited Warranty, which covers the entire vehicle for 3 years or 36,000 miles, whichever occurs first; and (2) the Powertrain Limited Warranty, which covers the vehicle's major powertrain components, and extends for 5 years or 60,000 miles, whichever occurs first. Compl. ¶ 91; Walters Decl. Ex. B, 3–5 (2013 Warranty Booklet).[2]

Plaintiff alleges that in July 2017, when his vehicle had been driven approximately 68,759 miles, his engine exhibited a knocking sound and ultimately failed. Compl. ¶ 15. He took his vehicle for diagnosis and repair to Subaru Orange Coast, an authorized Subaru retailer in Santa Ana, California. Compl. ¶ 15. On August 21, 2017, Subaru of Orange Coast completed repairs on Plaintiff's vehicle. Compl. ¶ 21. Because Plaintiff's 60,000-mile Powertrain Limited Warranty had

---

[2] The Court may consider this document without converting this motion to one for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that document integral to or explicitly relied on in complaint may be considered on motion to dismiss without converting motion into one for summary judgment).

3

expired nearly 9,000 miles prior, the repairs to his vehicle were not covered under that warranty. However, as a goodwill gesture, SOA paid $2,000 toward the repair. Compl. ¶20.

Notwithstanding that Subaru repaired Plaintiff's vehicle and covered part of the repair costs, Plaintiff alleges the following causes of action on behalf of a putative nationwide class or, alternatively, a putative California class:

| | |
|---|---|
| Count I | Violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, *et seq.*), Compl. ¶¶ 81–89; |
| Count II | Breach of Express Warranty, *id.* ¶¶ 90–100; |
| Count III | Breach of the Implied Warranty of Merchantability, *id.* ¶¶ 101–08; |
| Count IV | Breach of Duty of Good Faith and Fair Dealing, *id.* ¶¶ 109–12; and |
| Count IX | Breach of Written Warranty Under the Magnuson-Moss Warranty Act (15. U.S.C. §§ 2301, et seq.), *id.* ¶¶ 152–62. |

In the alternative, Plaintiff brings these causes of action on behalf of only a putative California class:

| | |
|---|---|
| Count V | Violations of California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, et seq.), *id.* ¶¶ 113–120; |
| Count VI | Violations of the California Business and Professions Code (Cal. Bus. & Prof. Code § 17200), *id.* ¶¶ 121–128; |
| Count VII | Violation of Song-Beverly Act For Breach of Express Warranties (Cal. Civ. Code §§ 1791.2 & 1793.2(D)), *id.* ¶¶ 129–139; and |
| Count VIII | The Song-Beverly Act – Breach of Implied Warranty Violations of California Civil Code §§ 1792, 1791.1, *et seq.*, *id.* ¶¶ 140–151. |

SOA and SBR now move to dismiss Plaintiff's Complaint.

4

### III.   ARGUMENT

#### A.   Legal Standard.

##### 1.   Fed. R. Civ. P. 8's Plausibility Standard.

A complaint that fails "to state a claim upon which relief can be granted" must be dismissed. Fed. R. Civ. P. 12(b)(6). Rule 8 demands "more than an unadorned, the-defendant-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (internal citation omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A court is not bound to accept as true legal conclusions couched as factual allegations. "Threadbare recitals . . . , supported by mere conclusory statements, do not suffice." *Id*. Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotation marks omitted).

##### 2.   Pleading Fraud: Rule 9(b)'s Particularity Requirement.

When fraud is alleged, the Rule 8 standard is enhanced by Rule 9(b), which commands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Specifically, the plaintiff must plead or allege the 'date, time and place of the

alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Granillo v. FCA US Ltd. Liab. Co.*, 2016 U.S. Dist. LEXIS 116573, at \*16–17 (D.N.J. Aug. 29, 2016). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Similarly, claims of unconscionability are subject to a heightened pleading standard and must be pleaded with specificity. *See Pastor-Richard v. Goodman Glob., Inc.*, 2013 U.S. Dist. LEXIS 191759, at \*5 (E.D. Ky. July 2, 2013). Plaintiff must state clearly the precise conduct underlying his fraud and unconscionability claims.

### B. Plaintiff fails to plead which claims he is asserting against which Defendant.

Plaintiff makes scattershot allegations against "Defendants" or "Subaru" without specifically referring to either SOA or SBR. *See generally* Compl. That is improper where Plaintiff asserts claims against multiple defendants. To properly plead a cause of action, "the claims must be stated in a manner that specifies which defendant engaged in which specific acts that are alleged to give rise to liability." *Ramziddin v. Monmouth Cty. Sheriff Dep't*, 2010 U.S. Dist. LEXIS 42798, at \*20 (D.N.J. Apr. 30, 2010). Without knowing what claims are made against them and on what specific grounds, both SOA and SBR will be prejudiced in defending Plaintiff's general allegations.

6

Plaintiff's failure to clearly identify which allegations are made against which Defendant warrants dismissal. *See Shonk v. Fountain Power Boats*, 338 F. App'x 282, 287 (4th Cir. 2009) (affirming dismissal of warranty claim pleaded as a single count against three defendants (boat manufacturer, engine manufacturer, and boat component manufacturer) as violating Rule 10(b) and failing to meet Rule 8's pleading burden); *Kounelis v. Sherrer*, 2005 U.S. Dist. LEXIS 20070, at *10 (D.N.J. Sep. 5, 2005) ("[I]n multiple defendant actions, the complaint must 'clearly specify the claims with which each individual defendant is charged.'") (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1248 (2d ed. 1990)).

## C.   Plaintiff's claims are governed by California law; all New Jersey claims must be dismissed.

Plaintiff's claims asserted under New Jersey law must be dismissed. Plaintiff is a California resident, who purchased, used and serviced his vehicle in California, and experienced the alleged defect in California. Well-settled choice of law rules dictate that California law applies to his claims.[3]

"The first step in a choice-of-law analysis is to determine whether there is in fact a conflict of law between the states having a nexus to the matter." William A

---

[3] The Court may undertake this choice of law analysis at the pleadings stage. *See, e.g.*, *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445 (D.N.J. 2012) (citing *Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. App'. 250, 255 (3d Cir. 2010); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 516 (D.N.J. 2008).

7

Dreier et al., *New Jersey Products Liability & Toxic Torts Law* § 20:2-1 (2015 ed.) (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2007)). Where a conflict exists, New Jersey follows the "most significant relationship test" of the Restatement (Second) Conflict of Laws § 145 to determine which state's law applies. *See Cornett v. Johnson & Johnson*, 211 N.J. 362, 372 (2012). Under that test, there is a presumption that the law of the state of injury will apply "unless another state has a more significant relationship to the parties and issues." *P.V.*, 197 N.J. at 143; Restatement (Second) Conflict of Laws §§ 145-46 (1971).

To determine if another state has a more significant relationship, the court considers the "contacts" and interests of each jurisdiction involved. Under Restatement § 145, these contacts are considered:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement, *supra*, § 145. If an analysis of those contacts is not conclusive, other general considerations, discussed below, may be considered.

8

DMEAST #32539905 v1

## 1.    Conflicts exist between New Jersey and California law.

### a.    Breach of Implied Warranty of Merchantability Claim.

Conflicts exist between New Jersey and California law regarding Plaintiff's breach of the implied warranty of merchantability claims (Counts III and VIII). California requires a plaintiff asserting implied warranty claims to be in vertical privity with the defendant. *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2008) ("In California a plaintiff alleging breach of warranty claims must stand in 'vertical privity' with the defendant" (internal quotation marks omitted)). New Jersey does not impose that requirement. *See Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620 (1997).

### b.    Breach of Express Warranty Claim.

Conflicts also exist between the laws of the two states regarding express warranty claims; particularly where, as here, a plaintiff asserts a breach of express warranty claim under California's Song-Beverly Consumer Warranty Act. *Compare* Compl., Count II, *with* Count VII; *cf. Feldman v. Mercedes-Benz U.S., LLC*, 2012 U.S. Dist. LEXIS 178924, at *20 (D.N.J. Dec. 18, 2012) (noting "courts have held that an actual conflict exists between the laws of New Jersey and California governing contract claims").

The elements of each claim differ. An express warranty claim under New Jersey's Uniform Commercial Code (UCC) requires a plaintiff to show: (1) that the defendant made an affirmation about the product; (2) the affirmation became part

9

DMEAST #32539905 v1

of the basis of the bargain; and (3) that the product ultimately did not conform to the affirmation. *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing N.J.S.A. 12A:2-313). In contrast, Song-Beverly requires a plaintiff to prove that (1) the product had a defect covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer did not repair the defect or nonconformity after a reasonable number of repair attempts. *Gonzalez v. Drew Indus.*, 750 F. Supp. 2d 1061, 1073 (C.D. Cal. 2007).

Under New Jersey law, a plaintiff's remedy for breach of express warranty is limited to actual damages plus any incidental or consequential damages. N.J.S.A. 12A:2-714. Song-Beverly provides for actual damages and, if willfulness can be shown, a civil penalty of up to two times actual damages. Cal. Civ. Code § 1794(b), (c). Song-Beverly also allows recovery of costs and expenses, including attorneys' fees, unlike New Jersey. Cal. Civ. Code § 1794(d).

c.      Statutory Consumer Fraud Claims.

As to Count I, it is well settled that "significant conflicts exist between the NJCFA and the consumer protection statutes of other states." *Agostino v. Quest Diagnostics*, 256 F.R.D. 437, 461 (D.N.J. 2009) (citing *Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 584 (Law Div. 2003) (recognizing differences in damage, reliance, and causation elements between NJCFA and law of other states)).

10

Specifically, there are conflicts between the NJCFA and the consumer protection statutes of California.

California's Consumer Legal Remedies Act (CLRA), Cal. Bus & Prof. Code § 17200, and Unfair Competition Law (UCL), Cal. Civ. Code § 1750, require a plaintiff to allege actual reliance on the allegedly unlawful conduct. *See In re Sony Gaming Network & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012) (citing *In re Tobacco II Cases*, 207 P.3d 20, 25 (Cal. 2009) (holding that a plaintiff in a UCL action "must demonstrate actual reliance . . . in accordance with well-stated principles regarding the element of reliance in ordinary fraud cases")); *Cohen v. DIRECTV, Inc.*, 101 Cal. Rptr. 3d 37 (Ct. App. 2009) (same for CLRA claims). Conversely reliance is not an element of a claim under the NJCFA. *See Montich*, 849 F. Supp. 2d at 446 (finding "NJCFA does not require a showing of reliance, whereas California's consumer protection laws do").

While the NJCFA provides for treble damages, *see* N.J.S.A. § 56:8-19, the CLRA expressly limits treble damages to cases involving public social services, *see* Cal. Civ. Code § 1783. Finally, the statute of limitations for a claim under the CLRA is three years, *see* Cal. Civ. Code § 1783, while the NJCFA provides six years, N.J.S.A. § 2A:14-1.

d.   New Jersey's Product Liability Act presents a further conflict between the laws of New Jersey and California.

New Jersey's Product Liability Act (PLA), N.J.S.A. 2A:58C-1, *et seq.*, also

11

presents a conflict. The PLA would subsume the claims for breach of the implied

warranty of merchantability, violation of the NJCFA, and breach of the duty of

good faith and fair dealing brought by the putative plaintiffs residing in New

Jersey. That is so because the Complaint alleges the possibility of personal injury.

*See* Compl. ¶ 4 ("This exposes the driver and occupants of the Class Vehicles . . .

to an increased risk of accident, injury, or death."). While SOA and SBR

strenuously deny those allegations, if accepted as true, the PLA would be the

exclusive remedy available to any New Jersey plaintiffs. *See Koruba v. Am. Honda

Motor Co., Inc.*, 396 N.J. Super. 517, 531 (App. Div. 2007).

### 2. California has the most significant relationship with this controversy.

Having determined that conflicts exist between the laws of New Jersey and

Plaintiff's home state, the Court must determine which state has the most

significant relationship to each claim. That analysis is guided by Restatement §§

148 and 188, applicable to consumer fraud and contract claims respectively, and

the general elements of Restatement § 6, applicable to every claim.

#### a.     Consumer Fraud Claims: Restatement § 148.

Restatement § 148 governs the choice-of-law analysis applicable to

consumer fraud claims (Count I). The Court must weigh (1) the place where the

plaintiff acted in reliance upon the defendant's representations; (2) the place where

the plaintiff received the representation; (3) the place where the defendant made

12

the representations; (4) the residence or place of incorporation and place of business of the parties; (5) the place where a tangible thing which is the subject of the transaction between the parties was at the time; and (6) the place where a plaintiff is to render performance under a contract which he has been induced to enter by false representations of the defendant. Restatement, *supra*, § 148(2).

These factors overwhelmingly favor the law of Plaintiff's home state. Factors (1), (2), and (5)—the place where Plaintiff acted in reliance, where Plaintiff received the alleged representations, and where the tangible thing was situated—all favor California. *See, e.g.*, *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208 (3d Cir. 2013). Factor (4)—the residence of the parties—favors Plaintiff's home state. *Id.* (citing Restatement, *supra*, § 148 cmt. i (noting residence of plaintiff is more important than residence of defendant.)). Factor (6) is inapplicable, as Plaintiff was induced into no contract.

Only one of the six factors—the place where the defendant made the representations—could weigh in favor of New Jersey. That factor, however, is irrelevant because no Defendant made any representations to Plaintiff, who purchased his vehicle from an unrelated third party.

The "overwhelming majority of courts" in similar cases have concluded that the law of the plaintiff's home state must govern. *Maniscalco*, 709 F.3d at 209.

13

b.     Contract Claims: Restatement § 188.

The remaining causes of action, sounding in contract, are governed by Restatement § 188. That section considers the following factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. If the place of negotiating and the place of performance are in the same state, the law of that state is presumed to apply. *See* Restatement, *supra*, § 188(3).

Mr. Salcedo negotiated the purchase of the vehicle with a private party in California and presented his vehicle for repair in that same state. Compl. ¶¶ 13, 16–20. The presumption for applying California law applies.

Even if the presumption provided by § 188(3) did not apply, four of the five factors favor the law of Plaintiff's home state—the place of contracting, negotiation, performance, and the location of his vehicle. The fifth factor is, at best, a draw. As with Plaintiff's consumer fraud claims, California law governs Plaintiff's contract claims.

c.     All Claims: Restatement § 6.

Restatement § 6, applicable to all claims, serves only to reinforce the conclusion that the law of Plaintiff's home state governs. That section considers: (1) interstate comity; (2) the interests of the parties; (3) the underlying field of law; (4) the interests of judicial administration; and (5) the interests of the states. The

14

Supreme Court of New Jersey has noted that factors two and four carry the least weight. *See Enry v. Estate of Merola*, 171 N.J. 86, 101–02 (2002).

On the first factor—interstate comity—the Third Circuit has been clear:

> [T]he interests of interstate comity favor applying the law of the [plaintiff's] own state. Applying New Jersey law to every potential out-of-state claimant would frustrate the policies of each [plaintiff's] state.

*Maniscalco*, 709 F.3d at 209 (internal citation omitted).

On the second factor—the interests of the parties—the Third Circuit has been equally clear: "Because the only contacts between the parties took place in [the plaintiff's home state], it is reasonable to assume that they expected that [that state's] law would apply." *Id*. at 209–10.

The third factor—the underlying field of law—is a draw. Specifically, consumer fraud law serves two purposes: compensating injured parties, which favors Plaintiff's home state, and deterring corporate misconduct, which favors New Jersey. *Id.* at 210. The same reasoning applies to contract claims under the UCC.

The fourth factor—the interests of judicial administration—might favor New Jersey, as applying a single state's law might be simpler, but those interests "must yield to the interests of the other factors." *Id*. (citing *Fu v. Fu*, 160 N.J. 108 (1999)).

Finally, the fifth factor—the interests of the states—plainly favors Plaintiff's

15

home state, as "the interest [of the home state] in having its law apply to its own consumers outweighs the interests of New Jersey in protecting out-of-state consumers from consumer fraud." *Id*.

Restatement § 6 overwhelmingly favors Plaintiff's home state, reinforcing the application of the claim-specific elements of Restatement §§ 148 and 188.

The overwhelming majority of the relevant factors favor the application of California law to Plaintiff's claims. Accordingly, to the extent he seeks to bring claims under New Jersey law, those claims must be dismissed.

**D.     Plaintiff's express warranty claim fails as a matter of law.**

Plaintiff asserts breach of express warranty claims against Defendants under the UCC and Cal. Civ. Code §§ 1791.2 & 1793.2(D) (Counts II & VII). Those claims fail as a matter of law for several reasons.

**1.     Plaintiff is seeking to enforce an expired warranty.**

Plaintiff's breach of express warranty claim fails first, and foremost, because his vehicle was not covered by any applicable express warranty when the alleged engine failure occurred.

The Powertrain Limited Warranty runs for 5 years or 60,000 miles, whichever occurs first. *See* Walters Decl. Ex. B, 3, 5 (2013 Warranty Booklet). Here, Plaintiff affirmatively alleges that his vehicle's Powertrain Limited Warranty had expired because his vehicle's engine failure occurred at 68,759 miles. *See* Compl. ¶ 13. No breach of warranty could have occurred because no applicable

16

warranty covered Plaintiff's vehicle when it experienced the alleged failure.

The terms governing the length of an automotive warranty are enforceable and binding on purchasers, and no claim for breach of warranty will lie where a defect manifests only after the expiration of the warranty. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022–23 (9th Cir. 2008); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986); *Dewey*, 558 F. Supp. 2d at 519; *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Ct. App. 2006)) ("[A] latent defect discovered after the warranty period has expired" cannot give rise to a claim, "even if the warrantor knew of the defect at the time of sale") (applying California law).

Attempting to avoid the clear result of those facts, however, Plaintiff baldly asserts that "Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect." Compl. ¶ 97. Even if that statement were true, it would not allow Plaintiff to improperly extend his Powertrain Limited Warranty. California law "forecloses th[is type of] argument[]. 'The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed.'" *Clemens*, 534 F.3d at 1023 (quoting *Daugherty*, 144 Cal. App. 4th at 830, and *Abraham*, 795 F.2d at 250). As the *Clemens* Court astutely observed,

> [e]very manufactured item is defective at the time of sale
> in the sense that it will not last forever; the flip-side of

17

this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted.

*Id.*; *see also Chiarelli v. Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 129416, at *18-19 (E.D.N.Y. Sep. 25, 2015) (collecting cases); *McQueen v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 21084 (D.N.J. Feb. 20, 2014) ("[B]reach of warranty actions premised on defects that did not arise until after the warranty expire[s]' are prohibited period, regardless of a plaintiff's assertion that the defendant 'knew that his vehicle was defective before the time-limit took effect.'" (quoting *Alban*, 2010 U.S. Dist. LEXIS 94038, at *7)). Without enforcement of this type of contractual limitation, time and mileage limitation would be rendered meaningless and a manufacturer would be required to insure its products in perpetuity.

### 2. Plaintiff has failed to adequately plead that the duration of the Powertrain Limited Warranty is unconscionable.

Seeking to evade the otherwise dispositive time limitations of the Powertrain Limited Warranty, Plaintiff asserts that those time limitations are unconscionable. Compl. ¶ 97.

There is "[n]othing substantively unconscionable or unreasonable about a five year/60,000 mile warranty." *Nelson v. Nissan N. Am., Inc. & Nissan Motor Co.*, 2012 U.S. Dist. LEXIS 127522 at *5 (D.N.J. Sept. 7, 2012) (rejecting plaintiff's unconscionability claim and granting dismissal of plaintiff alleged

18

problem occurred after expiration of warranty).

"Unconscionability has both a procedural and a substantive element." *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 993 (N.D. Cal. 2010). "Both elements must be present for a court to invalidate a contract or clause." *Id*. "The procedural element of unconscionability focuses on two factors: oppression and surprise." *Id.* at 808. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Id*. "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id*. "The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results that shock the conscience." *Id*.

Bald assertions of unconscionability will not suffice under even Rule 8's pleading standard. "To survive dismissal, plaintiffs must plead with particularity facts (rather than conclusions) showing that defendants' warranty limitations are unconscionable; further, such facts must be based on the best of plaintiffs' 'knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,' and meet the other requirements of Fed. R. Civ. P. 11(b)." *Pastor-Richard*, 2013 U.S. Dist. LEXIS 191759, at \*5; *see also Jarrett v. Panasonic Corp. N. Am.*, 8 F. Supp. 3d 1074, 1082 (E.D. Ark. 2013) ("Merely raising the specter of

19

unconscionability" is insufficient to overcome a motion to dismiss.).

Here, Plaintiff attempts to allege unconscionability by stating:

> Plaintiff and Class members had no meaningful choice in determining these time limitations the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Subaru and the Class members, and Subaru knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

Those unsupported assertions are insufficient to survive a motion to dismiss. Plaintiff does not plead why he supposedly "had no meaningful choice" in the warranty terms, particularly in light of his status as a second-hand purchaser, who had no interactions with any Subaru entity at the time of sale. He also provides no details regarding the alleged disparity in bargaining power.

Nearly identical "bare-bones allegations" that a vehicle purchaser "had no meaningful choice in determining the time and mileage limitation, and that a gross disparity in bargaining power existed between him and [the vehicle's manufacturer]" have been rejected as "no[thing] more than conclusions [that] are not entitled to the assumption of truth." *Alban v. BMW of N. Am., LLC*, 2011 U.S. Dist. LEXIS 26754, at *27 (D.N.J. Mar. 15, 2011).

### 3. The Powertrain Limited Warranty at issue in Plaintiff's Complaint does not cover design defects.

Plaintiff's express warranty claim fails for an additional reason—it is grounded on allegations of a design defect. *See, e.g.*, Compl., Prayer for relief E

(referring to "*the design defect*"). But the express warranty does not cover the design of the vehicle or any of its components. Instead, the warranty booklet limits coverage to defects in material or workmanship, stating:

> These warranties cover any repairs needed to correct *defects in material or workmanship* reported during the applicable warranty period and which occur under normal use . . . .

Walters Decl. Ex. B, at 4 (2013 Warranty Booklet) (emphasis added).

The law in this Circuit and in California is clear. Express warranties covering defects in material or workmanship—like the warranties pleaded by Plaintiff here—do not cover design defects. *See Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750 (8th Cir. 2013); *Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 668–69 (9th Cir. 2013); *Mack Trucks Inc. v. BorgWarner Turbo Systems, Inc.*, 508 Fed. App'x 180, 184–85 (3d. Cir. 2012); *Robinson v. Kia Motors Am. Inc.*, 2015 U.S. Dist. LEXIS 121755, at \*29-31 (D.N.J. Sep. 11, 2015); *Brothers v. Hewlett Packard Co.*, 2007 U.S. Dist. LEXIS 13155, at \*4 (N.D. Cal. Feb. 12, 2007).

The express warranties at issue are not unconscionable; they do not cover design defects; and they expired before Plaintiff experienced any problems with his vehicle. For those reasons, the express warranty claims should be dismissed.

### E.   Plaintiff's breach of implied warranty of merchantability claim fails for several reasons.

Plaintiff asserts a claim for breach of the implied warranty of merchantability under the UCC (Count III) and under California's Song-Beverly

21

Act (Count VIII). That claim fails under either statute.

### 1. Plaintiff's implied warranty expired at the same time as his express warranty.

Plaintiff's implied warranty claim fails because SOA properly and lawfully limited the temporal scope of any implied warranties to that of its express warranty. The express warranty accompanying Plaintiff's vehicle included these limitation in respect of implied warranties:

> ANY IMPLIED WARRANTIES OF MERCHANT-ABILITY OR FITNESS FOR A PARTICULAR PURPOSE END AT THE SAME TIME COVERAGE ON THE PARTICULAR COMPONENT ENDS.

Walters Decl. Ex. B, 7 (2013 Warranty Booklet) (emphasis in original). Thus, any implied warranty of merchantability applicable to the vehicle's engine also expired after five years or 60,000 miles.

That conclusion is supported by California and New Jersey law. *See* Cal. Civ. Code § 1791.1(c) ("The duration of the implied warranty of merchantability . . . shall be coextensive in duration with an express warranty which accompanies the consumer goods . . . ."); *Robinson*, 2015 U.S. Dist. LEXIS 121755, at *35; *General Motors Acceptance Corp. v. Jankowitz*, 216 N.J. Super. 313, 328 (App. Div. 1987).

Federal warranty law is no different. The Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301, *et seq.*, permits a manufacturer to limit the duration of implied warranties as long as the duration limitation is (1) conscionable and (2) disclosed in clear and unmistakable language prominently displayed on the face of

22

the express warranty. 15 U.S.C. § 2308(b). Consistent with those requirements, SOA's express warranty contains a clear and prominent limitation on the duration of any implied warranties. Just as Plaintiff's express warranty claim is precluded because the defect manifested after its expiration, so too is Plaintiff's implied warranty claim precluded; Counts III and VIII should be dismissed.

### 2.    Plaintiff's breach of implied warranty claim under the UCC is barred by the statute of limitations.

The statute of limitations for Mr. Salcedo's breach of the implied warranty of merchantability claim is four years. *See* Cal. Com. Code § 2725; *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014). Because a breach of the implied warranty of merchantability applies only where the defect existed when the goods left the manufacturer's control, the statute of limitations runs from delivery to the original purchaser. *Mydlach v. DaimlerChrysler Corp.*, 846 N.E.2d 126, 143 (Ill. App. Ct. 2006) (holding used-purchaser plaintiff's implied warranty claims barred by statute of limitations where vehicle was delivered to first purchaser more than four years prior to lawsuit); *MacDonald*, 37 F. Supp. 3d at 1100 ("Plaintiffs allege that the 'coolant pumps suffered from an inherent defect at the time of sale.' Thus, the latest each Plaintiff could have brought a claim was four years after he or she purchased a Class Vehicle.").[4]

---

[4] Plaintiff has failed to adequately plead any fraudulent concealment on the part of SOA or SBR. *See infra* Part III.H.1. Thus, the statute of limitations in not tolled.

23

The four-year statute of limitations began to run on the date Mr. Salcedo's vehicle was delivered to its original purchaser: May 6, 2013. *See* Walters Decl. Ex. A, 1 (Dealer Vehicle Inquiry Report). Any breach of implied warranty claims must, therefore, have been brought by May 6, 2017. Mr. Salcedo did not bring his breach of implied warranty until October 12, 2017. Accordingly, Count III of the Complaint must be dismissed as untimely.

### 3. Plaintiff lacks the requisite privity with Subaru of America, Inc. and Subaru Corporation.

Under California law, a consumer cannot recover economic loss for a breach of implied warranty under the UCC unless he stands in direct vertical privity with the defendant. *See Clemens*, 534 F.3d at 1023. California recognizes no applicable exceptions to that privity requirement. *See id.* 1022–24; *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1082-83 (N.D. Cal. 2011). Here, the Complaint affirmatively pleads a lack of privity between Plaintiff and Defendants. Plaintiff purchased is vehicle second-hand from a private party. Compl. ¶ 13. Plaintiff's implied warranty claim must be dismissed.

### 4. Plaintiff lacks standing to bring an implied warranty claim under the Song-Beverly Act.

Contrary to Plaintiff's assertions, Compl. ¶ 142, Plaintiff's secondhand vehicle is not a "consumer good" as defined by Cal. Civ. Code § 1791(a). The Song-Beverly Act defines "consumer goods" as "any *new* product or part thereof that is used, bought, or leased for use primarily for personal, family, or household

24

purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a)

(emphasis added). That definition does not include used automobiles. *See Dagher*

*v. Ford Motor Co.*, 190 Cal. Rptr. 3d 261, 271–72 (Ct. App. 2015); *Leber v. DKD*

*of Davis, Inc.*, 187 Cal. Rptr. 3d 731, 732–35 (Ct. App. 2015). That is particularly

true where the sale in question is a "private party used vehicle sale." *Dagher*, 190

Cal Rptr. 3d at 274. Moreover, the Acts definitions of "buyer" or "seller" do not

apply to secondhand purchases from a private seller. *Id.* 270–74.

Critically, Plaintiff affirmatively pleads his vehicle is not new and that he

purchased it from a private party. Compl. ¶ 13. As the *Dagher* Court held,

> Whatever statutory rights the private party sellers of the vehicle originally had under the Act, because they purchased it from a dealer, the Act does not provide that their statutory rights, or standing to pursue those rights, were somehow transferred to Plaintiff when the vehicle was privately sold to him, even when the express warranty protections were transferred.

*Id.* 275–76.

Accordingly, Plaintiff has no standing to pursue relief for an implied

warranty claim under the Song-Beverly Act because the right to assert implied

warranty claims under the Act did not transfer to him as a subsequent used vehicle

purchaser. *See id.* 275–76.

Plaintiff's breach of implied warranty claims, whether brought under the

UCC or Song Beverly, fail as a matter of law and must be dismissed.

25

**F.      Plaintiff's Magnuson-Moss Warranty Act claim fails for the same reasons as his express and implied warranty claims.**

Plaintiff also fails to state a claim for breach of warranty under the MMWA (Count IX). The MMWA creates a cause of action for consumers damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under . . . a written warranty, implied warranty, or service contract." 15 U.S.C. § 3210(d); *McGarvey v. Penske Auto. Grp., Inc.*, 2010 WL 1379967, at *1 (D.N.J. Mar. 29, 2010). As noted above, Plaintiff has failed to adequately allege any such breach of warranty, implied or express.

Absent a specific regulatory provision of the Act, a claim for breach of warranty under the MMWA is, in substance, entirely derived from state law. *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011). The MMWA only permits claims for breach of an express warranty that constitute a "written warranty" within the meaning of the Act. 15 U.S.C. § 2310(d)(2). Plaintiff's MMWA "written warranty" claims are substantively identical to his express and implied warranty claims, and must accordingly be dismissed on the same bases. *See Temple v. Fleetwood Enters.*, 133 Fed. App'x. 254, 268 (6th Cir. 2005) ("[I]f there exists no actionable warranty claim, there can be no violation of the Magnuson-Moss Act."); *Cooper*, 374 Fed. App'x at 254 ("In the instant case, [plaintiff's] Magnuson-Moss claim is based upon his state law claims of breach of express and implied warranties. Since the District Court correctly dismissed both

26

of those claims, [plaintiff's] Magnuson-Moss claim was also properly dismissed.").

### G.     Plaintiff's breach of the implied covenant of good faith and fair dealing claim fails as a matter of law because it is based solely on the conduct comprising his breach of warranty claims.

In Count IV, Plaintiff attempts to allege a violation of the implied covenant of good faith and fair dealing. He does so in two steps. First, attempting to divorce the implied covenant from any actual contract, he alleges that "[t]he implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms." Compl. ¶ 110. That allegation misstates the law. Second, Plaintiff alleges that Defendants violated an "independent duty" in two ways: (1) failing to notify Plaintiff of an alleged defect, and (2) failing to repair the alleged defect. *See* Compl. ¶ 111. Those allegations fail to state a claim for breach of the implied covenant, and Count IV must be dismissed.

The implied covenant "cannot impose substantive duties . . . beyond those incorporated in the specific terms of [the] agreement." *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (internal editing marks omitted) (quoting *Perez v. Wells Fargo Bank, N.A.*, 2011 WL 3809808, at *18 (N.D. Cal. Aug. 29, 2011)). To state a claim for a breach of the implied covenant, "a plaintiff must identify the specific contractual provision that was frustrated." *Id.* Simply stated, the covenant does not exist "independent[ly] of its contractual

27

underpinnings." *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000).[5]

Moreover, although the implied covenant rests on express terms, dismissal of the claim is required if it "relies on the same acts, and seeks the same damages, as" a breach of contract claim. *Bionghi v. Metro. Water Dist.*, 70 Cal. App. 4th 1358, 1370 (Ct. App. 1999).

Regarding the claim that Defendants failed to provide Plaintiff with notice of the alleged defect, Plaintiff identifies no provision of any contract requiring Defendants to provide such a notice. Because the implied covenant "cannot impose substantive duties . . . beyond those incorporated in the specific terms of [the] agreement," *see Plastino*, 873 F. Supp. 2d at 1191, that allegation fails to state a claim.[6] Also, neither SOA nor SBR had any involvement in Plaintiff's private-party purchase; leaving Defendants no opportunity to provide any information.

Plaintiff's second broad allegation to support Count IV—that "Defendants" failed to fix the allege defect, Compl. ¶ 111—merely restates the basic warranty obligation underlying the express warranty claim in Counts II and VII. It relies on

---

[5] Additionally, New Jersey's courts require that proof of bad motive or intent be pleaded to sustain a claim for breach of the implied covenant. *Brunswick Hills Racquet Club, Inc. v. Rt. 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005). Plaintiff has failed to adequately plead any such bad motive or intent.

[6] To the extent Plaintiff is seeking relief based on Defendants' supposed failure to notify him and other vehicle owners and repair his vehicle, his claim is preempted by the Safety Act. *See infra* Part III.I.

28

the same acts, and seeks the same damages, as the express warranty claim, and, as a result, fails as a matter of law.

### H. Plaintiff's statutory consumer fraud claims fail for several reasons.

Plaintiff's complaint alleges a violation of the NJCFA on behalf of the proposed nationwide class, and violations of the CLRA and the UCL on behalf of the alternative California class. None can be sustained.[7]

### 1. Plaintiff fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

Each of Plaintiff's statutory consumer fraud claims is subject to the heightened pleading standard of Rule 9(b). *Kearns*, 567 F.3d at 1125 ("In fact, we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Coba v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 8366, at *22–23 (D.N.J. Jan. 22, 2013) (applying heightened pleading standard to NJCFA claim). The Complaint falls woefully short of the details required by Rule 9(b), particularly because Plaintiff did not purchase his vehicle from SOA, SBR, or an authorized Subaru retailer.

Plaintiff alleges both generalized omissions and unidentified affirmative misrepresentations. *See, e.g.*, Compl. ¶¶ 84, 85, 116 (alleging that Subaru "knowingly concealed, suppressed, and omitted the fact that the Class Vehicles are

---

[7] Plaintiff's NJCFA claims must be dismissed based on choice-of-law rules, but Defendants nonetheless address the pleading failure of that claim here as it applies equally to the claims under California and New Jersey law.

defective," and that Subaru "represent[ed] that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have"). Each is addressed separately.

a.      Omissions-Based Claims.

Parroting vague and unfounded conclusions, Plaintiff alleges that Defendants "knowingly concealed, suppressed, and omitted the fact that the Class Vehicles are defective." Compl. ¶ 84; *see also* ¶¶ 116, 125. Plaintiff baldly asserts that Subaru knew of the alleged defect prior to selling Plaintiff's vehicle. Compl. ¶¶ 84, 116. In an attempt to support those unfounded assertions, Plaintiff relies on a handful of complaints to the National Highway Traffic Safety Administration that do not apply to the Class Vehicles as defined by Plaintiff, and complaints appearing on online forums that largely postdate the sale of Plaintiff's vehicle. *Compare* Compl. ¶ 1 (defining "Class Vehicles" as "model year 2013 and 2014 Subaru WRX and WRX STi vehicles"), *with id.* ¶ 66 (quoting complaints made to NHTSA regarding model year 2008 and 2009 vehicles), *and id.* 32 n.9 (citing online forum complaints).

Critically, those cited complaints were not made to Subaru and provide no support for Plaintiff's fraud claims. *See, e.g.*, *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013) (quoting *Friedman v. Am. Guardian Warranty Servs.*, 837 So.2d 1165, 1166 (Fla. Dist. Ct. App. 2003) ("'Fraud based upon a

30

failure to disclose material information exists only when a duty to make such disclosure exists.'") (finding no duty to disclose alleged defect when plaintiff failed to plausibly allege knowledge of the defect prior to sale)).

Here Plaintiff alleges no actual knowledge by anyone at Subaru, but elects to repeat generic allegations throughout the Complaint. Broad and generic statements that Subaru collects data and warranty information and maintains an internal quality management system cannot satisfy the heightened pleading standard of Rule 9(b) or even Rule 8's plausibility standard. *See Gotthelf v. Toyota Motor Sales, U.S.A.*, 525 F. App'x 94, 104 (3d Cir. 2013). Further doubt is cast upon Plaintiff's allegations by the fact that he purchased the vehicle from a third-party, and fails to explain how Subaru would have had an opportunity to apprise Plaintiff of any such facts in this context.

In *Gotthelf*, a class action against Toyota alleging defective headlamps, the Third Circuit affirmed dismissal of statutory fraud claims where plaintiff alleged "that Toyota should have been aware of the [alleged] defect through its own '[b]ooks of [k]nowledge, internal testing, information on dealership repair orders, warranty data, [and] records of customer complaints.'" *Id.* The Court of Appeals ruled that such general allegations about a car company's business operations were insufficiently pleaded because the plaintiff did "not state when the alleged complaints were received, or to whom at Toyota these alleged complaints were

31

sent." "Such conclusory allegations [were] insufficient to establish Toyota's knowledge, and concealment, of the [alleged] defect." *Id*.

The Third Circuit further held that complaints made to NHTSA, and not the vehicle's manufacturer, were insufficient. The court held that only when NHTSA launched an investigation and notified Toyota of that investigation could knowledge be imputed to Toyota. *Id.* Here, there has been no investigation by NHTSA into the alleged defect, and Plaintiff can point to nothing to support his allegation that either SOA or SBR received any of those complaints.

Likewise, Plaintiff's reference to on-line enthusiast's forums is similarly unavailing. "Courts in this district have repeatedly found that consumer complaints on third-party websites are not sufficient to infer a manufacturer's knowledge of a product defect where there are no allegations that the manufacturer saw such complaints." *Granillo*, 2016 U.S. Dist. LEXIS 116573, at *29-30; *see also Fisher v. Honda N. Am., Inc.*, 2014 WL 2808188, at *5 (C.D. Ca. 2014) (finding allegations of consumer complains on government website allegedly "tracked" by the defendant could not support presale knowledge).

Plaintiff has pleaded no facts or specifics that establish who at SOA or SBR supposedly knew about the alleged defect or when that knowledge supposedly came about. As a result, his omissions-based fraud claims must be dismissed.

32

b.      Affirmative misrepresentations.

The Complaint pleads no actual statement, by any actual person, at any actual time. Instead, Plaintiff advances the entirely naked assertion that Subaru made misrepresentations amounting to "unfair and deceptive trade practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive." Comp. ¶ 85.[8]

The Complaint does not identify what those alleged misrepresentations allegedly were, when they were made, or to whom they were made. Those bare recitations are untethered to any actual facts, and courts have dismissed similar claims on nearly identical facts. *See Kearns*, 567 F.3d at 1126 (affirming dismissal of UCL and CLRA claim were the plaintiff "fail[ed] to allege in any of his complaints the particular circumstances surrounding such representations"); *Beshwate v. BMW of N. Am., LLC*, 2017 U.S. Dist. LEXIS 164820, at *35 (E.D. Cal. Oct. 3, 2017) (dismissing UCL and CLRA claims where the plaintiff did "not identify the time and place of the alleged misrepresentations or who the alleged

---

[8] It is not clear on the face of the Complaint that Plaintiff has intended to base his statutory fraud claims on alleged affirmative misrepresentations, and allegations to that affect are absent under Plaintiff's CLRA and UCL claims.

33

misrepresentations were made by").

Plaintiffs' fraud claims—the several state statutory claims alleged in Counts I, V, and VI—are insufficiently pleaded and should be dismissed.

### 2. Defendants had no opportunity to make any misrepresentations or omissions to Plaintiff because Plaintiff purchased his vehicle from a private party.

As a common-sense extension of the above discussion, Defendants note they had no opportunity to make any misrepresentations to Plaintiff or omit any information. As an initial matter, Mr. Salcedo did not purchase his vehicle from an authorized Subaru retailer. He purchased his vehicle secondhand from a private party. Hence, neither SOA nor SBR played any role in that sale and cannot be held liable for any representations or omissions made by the unknown private party seller.

Further, the fraud claims against SBR are even more tenuous because SBR does not sell, distribute, market, warrant, or service Subaru vehicles in the United States, and could never have omitted or misrepresented any information to Plaintiff in marketing materials, during a sale transaction, or otherwise. Nor could SBR have had a duty to avoid making any omission or misrepresentation in the first place. *See, e.g., McCabe*, 948 F. Supp. 2d at 1370.

### 3. Plaintiff's fraud claims are an impermissible attempt to lengthen his expired Limited Powertrain Warranty.

As previously noted, under both California and New Jersey law, no claim can lie if the supposed defect manifests after the expiration of the express

34

warranty. Recognizing this obstacle, Plaintiff relies on statutory fraud claims in an improper attempt to extend the length of his express warranties. That approach has been repeatedly rejected.

In *Perkins v. Daimler Chrysler Corp.*, the panel held that "recognizing a viable CFA claim in the[se] circumstances presented would essentially compel manufacturers and sellers to warrant their products and component parts beyond that to which the parties expressly agreed." 383 N.J. Super. 99, 113 (App. Div. 2006). In rejecting the plaintiff's claim, the panel noted that "to interpret the CFA, beyond its present scope, to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of the contract which defined the length and scope of the warranty period." *Id.* Similarly, in *Daugherty*, the Court of Appeals held that no CLRA or UCL claim could stand where the engine at issue there functioned as warranted. 144 Cal. App. 4th at 835.

Such a claim is, moreover, another attempt by Plaintiff to argue unconscionability, for which he fails to plead any required, specific facts. Plaintiff may not extend his expired express warranties by filing a statutory fraud claim.

### 4. Plaintiff's New Jersey Consumer Fraud Claims fail as a matter of law.

As noted *supra* Part C, New Jersey law does not apply to Plaintiff's claims and his NJCFA claim must be dismissed. Even if Plaintiff's claim could proceed,

DMEAST #32539905 v1

he has failed satisfy the pleading requirement of either Rule 8 or 9. Where the only allegation regarding a plaintiff's NJCFA claim is that the defendant provided a substandard part that outperformed the express warranty period, no NJCFA claim exists. *See Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 337 (D.N.J. 2010); *Perkins*, 383 N.J. Super. at 113.

### 5. Plaintiff's CLRA claims must be dismissed because he failed to file a required affidavit.

Plaintiff'' CLRA claim should be dismissed for the additional reason that Plaintiff did not file, concurrently with his complaint, "an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d). Importantly, "[i]f a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice." *Id.*; *see also McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1055 (C.D. Cal. 2014) (dismissing CLRA claims for failure to file affidavit); *In re Apple & AT&T iPad Unltd. Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (same).

Section 1780(d)'s affidavit requirement is not procedural and applies to actions brought in federal court. *See McVicar*, 1 F. Supp. 3d at 1055; *Sperling v. Stein Mart, Inc.*, 2016 U.S. Dist. LEXIS 111227, at *29-30 (C.D. Cal. Jan. 26, 2016); *Ruszecki v. Nelson Bach United States*, 2015 U.S. Dist. LEXIS 190302, at

36

*12–13 (S.D. Cal. Jan. 12, 2015).

Plaintiff's failure to comply with the strict procedural requirements of the CLRA mandate dismissal of his CLRA claim.

### 6.   Plaintiff's California Unfair Competition Law claim must be dismissed to the extent he seeks monetary damages.

Plaintiff's UCL claim must be dismissed to the extent he seeks damages that are not available under this statute. Cal. Bus. & Prof. Code § 17200, *et seq.* Restitution is the only measure of damages recognized by the UCL. *See Inline, Inc. v. Apace Moving Sys.*, 125 Cal. App. 4th 895, 898 (Cal. Ct. App. 2005).Thus, to the extent other relief is sought, it is not available and Plaintiff's claim should be dismissed.

Further, restitution is not even available from SOA or SBR here because the third-party retailer, Subaru Orange Coast, is the entity that received the money in exchange for repairing Plaintiff's vehicle. Restitution is limited to situations in which the defendant directly took property from plaintiff. *Rosen v. Uber Tech., Inc.*, 164 F. Supp. 3d 1165, 1178 (N.D. Cal. 2016). Here, neither Defendant did so. Thus, Plaintiff's UCL claim must be dismissed.

### I.   Plaintiff's requested injunctive relief is preempted by federal law.

In his prayer for relief, Plaintiff asks this Court to order a nationwide recall of the putative class vehicles. *See* Compl., Prayer for Relief E. At a minimum, plaintiffs ask the Court to require Subaru to issue a notice to consumers, making

37

them aware of an alleged safety defect. *Id.* Plaintiff also seeks similar injunctive relief under the UCL. Those requests are beyond the power of state law and must be dismissed.

Plaintiff alleges that the supposed connecting rod bearing issue at the heart of the Complaint "poses a safety risk to the operator and passengers of the [putative] Class Vehicles." Compl. ¶ 4. He further alleges that "[t]he Rotating Assembly Defect can cause catastrophic engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speed. This exposes the driver and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death." *Id.* Subaru disputes that contention. However, taking allegations in the pleading as true, these safety allegations and the relief sought by Plaintiff are preempted by federal law.

Courts consistently have concluded that, regarding recalls, state law authority is preempted by the comprehensiveness of the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), 49 U.S.C. §§ 30101–30183. *See Granillo*, 2016 U.S. Dist. LEXIS 116573, at *67 ("[Plaintiff's] UCL claim is dismissed with prejudice as an improper intrusion into federal governmental operations by state law . . . ."); *Cox House Moving, Inc. v. Ford Motor Co.*, 2006 WL 2303182, at *8 (D.S.C. Aug. 8, 2006) ("Federal courts have held that conflict preemption applies to prevent the judiciary from ordering vehicle recalls."); *Lilly v.*

38

*Ford Motor Co.*, 2002 WL 84603910, at *5 (N.D. Ill. Jan. 22, 2002) ("It is clear that Congress did not intend for the federal courts to have authority to order recalls of motor vehicles on a nationwide basis."); *In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 944-45 (S.D. Ind. 2001); *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 584 (D. Md. 2001).

Courts repeatedly have reached this conclusion under the principles of conflict preemption, which arises where state action would frustrate the purpose of a federal scheme. *Bridgestone*, 153 F. Supp. 2d at 943-44. It applies even if the preempting legislation contains a savings clause. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000). "[P]arallel, competing system[s] of court-ordered and supervised recalls would undermine and frustrate the Safety Act's objectives of prospectively protecting the public interest through a scheme of administratively enforced remedies." *Bridgestone*, 153 F. Supp. 2d at 944. The fundamental underpinning of the Safety Act was to implement a recall system that supported and supplemented the Federal Motor Vehicle Safety Standards created by NHTSA.

The notice and recall Plaintiff seeks are barred also by the doctrine of primary jurisdiction, a doctrine that focuses on "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006). Although its elements defy exact definition, courts consider two factors: (1)

39

whether the case "involves a matter within the special expertise of the agency; and (2) [whether] there is a need to promote uniformity in administrative policy or a possibility of inconsistent results between the courts and the agency." *Id.* Here, both factors strongly favor deferring to NHTSA's "special competence." *Id*. at 629; *see Clark v. Actavis Grp. HF*, 567 F. Supp. 2d 711, 719 (D.N.J. 2008) (holding doctrine of primary jurisdiction applies regarding federal agency's particularized knowledge and statutory authority to order recalls).

The authority to grant the relief requested by Plaintiff—the issuance of a notice to consumers and implementing a recall—lies not with this Court, but rather exclusively with NHTSA. Accordingly, Plaintiff's claim for injunctive relief, including under the UCL, must be dismissed. *See Granillo*, 2016 U.S. Dist. LEXIS 116573, at *63 ("Here, the requested injunctive relief under the UCL clearly violates the doctrine of intergovernmental immunity, because it would directly regulate the actions of the NHTSA, a federal agency.")

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants SOA and SBR respectfully request this Court enter an order dismissing the Complaint, with prejudice, and with costs.

40

Respectfully submitted,


/s/Neal Walters

Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
Telephone: 856.761.3400
Facsimile: 856.761.1020

Attorneys for Subaru of America, Inc. and
Subaru Corporation

Dated:    December 11, 2017

41